**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------X

| | | |
|---|---|---|
| LEA ADAR, ATTAR FAMILY, LTD., RICHARD BASSIN, ELLEN BECKER, RONALD J. BERK, HOWARD COMMANDER, SCOTT COMMANDER, PETER R. DUCOFFE, KENNETH ELAN, LAWRENCE B. FISHER, J. DAVID FORSYTH, JACK FRANCO, SCOTT GARBER, STEPHEN W. GARBER, SONIA GLUCKMAN, DAVID R. GROSS, THE HART ORGANIZATION CORP., MARY L. HART, DAVID HERSKOVITS, HIGH CAPITAL FUNDING, LLC, GERALD F. KAPLAN, MICHAEL G. LEFF, JAMES M. LIBBY, ALEXANDER MICHAELS, JAMES J. NOONAN, ONE WALTON PLACE, LLC, DAVID A. RAPAPORT, SIDNEY STRICKLAND, TALL OAKS, LLC, FRANCES N. VEILLETTE, WEINER FAMILY INVESTMENTS, LLC, AND KENNETH F. ZADECK , | : | Civil Action No. |
| | : | |
| Plaintiffs, | : | **COMPLAINT** |
| - against - | : | |
| CONVERTED ORGANICS INC., | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

-------------------------------------------------------------X

Plaintiffs for their complaint against Converted Organics Inc. ("Converted" or the "Company"), allege:

**NATURE OF ACTION**

1.   Plaintiffs bring this action for Converted's breach of the Financing Terms Agreement For Sale of Bridge Notes and Bridge Equity Units, dated April 11, 2006 (the "FTA"). In consideration for their investment of $1.515 million, Plaintiffs and the other investors in the bridge financing received a total of 101 Units, consisting of an 8% Bridge Note and a Bridge Equity

Unit for the issuance of *restricted* securities identical in form to the securities to be offered for sale in the Company's initial public offering ("IPO").

2.   The Company's IPO of 1.8 million units (each unit consisting of a share of common stock, a Class A warrant, and a Class B warrant) closed on February 16, 2007.  Plaintiffs were issued a total of 256,359 Bridge Equity Units (each unit consisting of a *restricted* share of common stock, a *restricted* Class A warrant, and a *restricted* Class B warrant).

3.   The FTA required that a resale registration statement, covering the securities issued to Plaintiffs and the other investors, be filed with the Securities and Exchange Commission ('SEC") and declared effective within 180 and 240-270 days, respectively, of the IPO closing and cause it to remain effective until all of the Class A and Class B warrants had either been exercised or expired.  In the event the Company failed to do so, a 2% cash late fee would be payable to Plaintiffs for each month or part thereof the Company was in default.

4.   The registration statement covering the warrants and common stock underlying the warrants was not filed until February 6, 2008, 355 days after the IPO closing, and was not declared effective until June 16, 2008, 485 days after the IPO closing.

5.   Plaintiffs suffered damages as a result of the Company's failure to register their securities within the time required under the FTA.  During the period of time when their securities should have been registered, the Company's Class A and B warrants closed for as high as $12.35 and $11.63, respectively, per warrant.  Plaintiffs have suffered damages of $11.05 and $10.82, respectively, per warrant.  In total, Plaintiffs have suffered damages in excess of $5.6 million ($2,832,766.95 on the Class A warrants and $2,773,804.38 on the Class B warrants) as a result of the Company's failure to register their securities within the time required under the FTA.

6.  Plaintiffs are also entitled to payment of the 2% cash late fee of $288,200 for the Company's failure to register their securities.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction of this matter pursuant to section 1332 of the Judicial Code, 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.  The Court also has supplemental jurisdiction pursuant to section 1367 of the Judicial Code, 28 U.S.C. § 1367, over those Plaintiffs' claims that do not exceed $75,000, exclusive of interest and costs.

8.  Venue is proper in this Court because the Company is incorporated in the state of Delaware, and the Financing Terms Agreement, the subject matter of this action, contains the following jurisdiction and venue provision:  "The parties irrevocably consent to the jurisdiction and venue of the state and federal courts located in Wilmington, DE in connection with any action related to this transaction."  The Financing Terms Agreement also contains the following choice of law provision:  "All transaction documents shall be governed by and construed under the laws of the state of Delaware."

## PARTIES

9.  Plaintiffs, as set forth on the annexed Schedule A, are all citizens of States other than Delaware and Massachusetts and invested in the Company pursuant to the FTA and were issued Bridge Equity Units of the Company consisting of *restricted* shares of common stock *restricted* Class A warrants and *restricted* Class B warrants.

10.  Plaintiffs Lea Adar, Attar Family, Ltd., Richard Bassin, Ronald J. Berk, Howard Commander, Peter R. Ducoffe, Stephen W. Garber, Sonia Gluckman, The Hart Organization Corp., Mary L. Hart, David Herskovits, High Capital Funding, LLC, Gerald F. Kaplan, James M. Libby,

Alexander Michaels, David A. Rapaport, Tall Oaks, LLC, Weiner Family Investments, LLC, and Kenneth F. Zadeck have each suffered damages in excess of $75,000, exclusive of interest and costs, as a result of the wrongful conduct complained of herein.

11.   Defendant Converted is incorporated in Delaware and maintains its principal executive offices in Massachusetts.  The Company planned to produce all-natural, organic soil amendment or fertilizer products through food waste recycling.

## FACTS

12.   Pursuant to the FTA, Plaintiffs purchased from the Company a total of 87⅓ Units of Converted at a price of $15,000 per Unit for a total of $1.31 million.

13.   Each Unit consisted of an 8% Bridge Note in the face amount of $15,000 and a Bridge Equity Unit for the issuance of *restricted* securities identical in form to the securities to be offered for sale in the Company's planned IPO.  Under the FTA, the number of IPO Units each purchaser would receive would be the principal of such purchasers' Bridge Notes divided by the public offering price, i.e. the amount invested divided by the IPO Unit price.

14.   On February 16, 2007, the Company's $9.9 million IPO of 1.8 million units, priced at $5.50 per unit, closed.  Each unit in the IPO consisted of one share of common stock, one (redeemable) Class A warrant to purchase one share of common stock at a price of $8.25 per share for 5 years, and one (non-redeemable) Class B warrant to purchase one share of common stock at a price of $11.00 per share for 5 years.

15.   Each Bridge Equity Unit consisted of 2,727 *restricte*d shares of common stock, 2,727 *restricted* Class A warrants, and 2,727 *restricted* Class B warrants.

16. On February 16, 2007, Plaintiffs were issued a total 256,359 Bridge Equity Units. In total, 293,629 Bridge Equity Units were issued to the investors.

4

17.   On or about March 15, 2007, Plaintiffs were issued the individual securities (*restricted* common stock, *restricted* Class A warrants, and *restricted* Class B warrants) that comprised the Bridge Equity Units.

18.   On May 23, 2007, the Company repaid the Bridge Notes, after the maturity date of those notes was extended several times by consent of Plaintiffs.

### FAILURE TO REGISTER THE SECURITIES

19.   Registration of the securities issued to FTA purchasers required the following:

> The Company will (1) file a resale registration statement within 180 days of the ***Public Offering*** closing: (2) cause it to be effective within 240 days of the ***Public Offering*** closing if the registration statement is not reviewed by the Securities and Exchange Commission ("*SEC*") and 270 days of the ***Public Offering*** closing if the registration statement is reviewed by the *SEC* covering the resale of the ***Bridge Equity Units*** and the ***Document Preparation Securities*** (including the resale of any shares of common stock issuable upon the exercise or conversion of any ***Bridge Equity Units***); and (3) cause it to remain effective with a current prospectus available for a period of the longer of two years, or until the expiration or exercise in full of any warrants contained in the ***Bridge Equity Units***.

FTA at 4 (Registration Rights) (emphasis in original).

20.   If the Company failed to satisfy any of the above registration requirements, the FTA provided for payment of the following late fee:

> If the Company fails to satisfy requirements (1) or (2) above it will be subject to a 2% cash late registration fee (i.e. 2% of the outstanding ***Bridge Note(s)*** principal) per month or part thereof that such failure continues ("***Late Fee***"); provided such ***Late Fee*** shall not be accrued for any month after one year from the ***First Closing*** that the Company is current in its reporting obligations under the Exchange Act and has been subject to such reporting requirements for at least 90 days, unless any Holder is the beneficial owner of more than 1% of ***Converted Organics's*** issued and outstanding common stock, in which case the ***Late Fee*** shall continue to accrue for no more than two years from the ***First Closing***.

5

> If the Company fails to satisfy requirement (3) above, the ***Late Fee***
> shall continue until the longer of the period set forth in the preceding
> paragraph, or expiration or exercise in full of any warrants included
> in the ***Bridge Equity Units***.

FTA at 4-5 (Registration Rights) (emphasis in original).

21.   The deadline for filing the registration statement was August 15, 2007, i.e. 180 days after the IPO's closing.

22.   The deadline for the registration statement to be declared effective if not reviewed by the SEC was October 14, 2007, i.e. 240 days after the IPO's closing.

23.   The deadline for the registration statement to be declared effective if reviewed by the SEC was November 13, 2007, i.e. 270 days after the IPO's closing.

24.   On February 6, 2008, the Company filed a Form S-1 registration statement (File No. 333-149079) covering Plaintiffs and the other investors 293,629 Class A warrants, 293,629 Class B warrants and the common stock underlying those warrants, 175 days after the deadline.  No registration covering the common stock issued to Plaintiffs and the other investors pursuant to the FTA was ever filed because the common stock became saleable under the provisions of SEC Rule 144.

25.   On March 6, 2008, Class A warrants closed at  $12.35 per warrant and Class B warrants closed at $11.63 per warrant.  FTA purchasers were still restricted from exercising or selling their warrants on that date as a result of the Company's failure to have them registered as required.

26.   The registration statement (File No. 333-149079) was reviewed by the SEC.

27. On June 16, 2008, the registration statement (File No. 333-149079) covering the warrants and common stock underlying the warrants issued to Plaintiffs and the other investors was declared effective by the SEC, after the market close, 245 days after the deadline.

28. On June 17, 2008, Class A warrants closed at $2.99 per warrant and Class B warrants close at $3.98 per warrant on that date, and continued to generally decline in value. The average price of the Class A warrants between June 17, 2008 and their November 14, 2008 redemption was approximately $1.30. The average price of the Class B warrants between June 17, 2008 and October 29, 2010 was approximately $0.81.

29. As a result of the Company's failure to have the warrants and the common stock underlying the warrants registered as required, Plaintiffs were damaged.

30. Under the terms of the FTA, set forth above, Plaintiffs were also entitled to payment of the cash *Late Fee* for the 11 months or parts thereof that the Company failed to file the registration statement, failed to have it declared effective by the SEC, and failed to cause such registration statement to remain effective. Plaintiffs are entitled to a cash late fee of 288,200, i.e. $26,200 (2% of $1,310,000) for each month or part thereof. To date the Company has not paid the cash late fee.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

31. Plaintiffs incorporate by reference paragraphs 1 through 30 herein.

32. Defendant entered into a contract, the FTA, with Plaintiffs.

33. Defendant materially breached the terms of the FTA in failing to register the securities issued to Plaintiffs, failing to timely have it declared effective by the SEC.

7

34.  Defendant materially breached the terms of the FTA in failing to pay the cash late fee for each month or part thereof that it failed to satisfy its registration obligations thereunder.

35.  As a result of such breach, Plaintiffs have suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

(i)  Awarding Plaintiffs damages for the wrongful acts alleged;

(ii)  Awarding Plaintiffs such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues that are triable before a jury.

Dated:  March 25, 2011

ROSENTHAL, MONHAIT & GODDESS, P.A.

By: /s/ Jeffrey S. Goddess
Joseph A. Rosenthal (No. 234)
Jeffrey S. Goddess (No. 630)
P. Bradford deLeeuw (No. 3569)
919 Market Street
Suite 1401
Wilmington, DE 19899
Telephone: (302) 656-4433
Facsimile:  (302) 658-7567

RABIN & PECKEL LLP
I. Stephen Rabin
Joseph V. McBride
Joseph P. Garland
317 Madison Avenue
21st Floor
New York, NY 10017
Telephone: (212) 880-3722
Facsimile:  (212) 880-3716

Attorneys for Plaintiffs

# **<u>SCHEDULE A</u>**

| Plaintiff | Number of Warrants* | Citizenship |
|---|---|---|
| Lea Adar | 3,636 | Florida |
| Attar Family, Ltd. | 7,636 | Texas |
| Richard Bassin | 7,273 | Florida |
| Ellen Becker (Marc & Ellen Becker TIC) | 2,727 | Louisiana |
| Ronald J. Berk | 9,091 | New York |
| Howard Commander | 9,091 | New York |
| Scott Commander | 1,818 | New York |
| Peter R. Ducoffe (Peter R. & Barbara H. Ducoffe JTWROS) | 4,545 | Georgia |
| Kenneth Elan (Kenneth & Jocelin Elan JTWROS) | 2,727 | New York |
| Lawrence B. Fisher (Larry & Neila Fisher JTWROS) | 2,727 | New York |
| J. David Forsyth | 3,091 | Louisiana |
| Jack Franco | 1,818 | Florida |
| Scott Garber | 1,818 | Georgia |
| Stephen W. Garber | 9,091 | Georgia |
| Sonia Gluckman | 4,545 | New York |
| David R. Gross | 3,091 | Pennsylvania |
| The Hart Organization Corp. | 3,636 | New York & Georgia |
| Mary L. Hart | 9,091 | Georgia |
| David Herskovitz (David & Joan Herskovitz JTWROS) | 3,636 | Georgia |
| High Capital Funding, LLC | 109,090 | Alabama, California, Florida, Georgia, Louisiana, Maryland, Michigan, Mississippi, New Jersey, New York, Ohio, Pennsylvania & Texas |
| Gerald F. Kaplan | 5,455 | Pennsylvania |

| Plaintiff | Number of Warrants* | Citizenship |
|---|---|---|
| Michael G. Leff | 1,818 | Georgia |
| James M. Libby | 3,636 | Georgia |
| Alexander Michaels | 7,273 | New Jersey |
| James J. Noonan | 3,091 | Florida |
| One Walton Place, LLC | 2,727 | Louisiana |
| David A. Rapaport | 4,545 | Georgia |
| Sidney Strickland (Sidney & Carol Strickland JTWROS) | 3,091 | New York |
| Tall Oaks, LLC | 9,091 | New York |
| Frances N. Veillette | 1,818 | New York |
| Weiner Family Investments, LLC | 9,091 | Georgia |
| F. Kenneth Zadeck (F. Kenneth Zadeck & Lisa Weiss JTWROS) | 4,545 | New York |
| **Total:** | **256,359** | |

* The number of warrants is for each class of warrant.